The first case for argument this morning is United States v. ORTEGA-ASCANIO Good morning, Your Honors. May it please the Court, Maria Stratton appearing on behalf of Appellant Alfredo Ortega-Ascanio. I want to begin my argument by referring the Court to the recent case of United States v. Ubaldo Figueroa, which was an amended decision issued March 12, 2003, and mentioned in the government's 28J letter. It appears that that case strengthens Mr. Ortega's claim that the Court should have permitted him to withdraw his guilty plea to take advantage of the intervening St. Cyr decision of the United States Supreme Court. Ubaldo and Mr. Ortega have many of the same equities that would have plausibly influenced the immigration judge to grant the 212C relief had he been allowed to present it at the deportation hearing. He had a family in this country, in fact, all of his siblings were in this country, which is more than could be said for Mr. Ubaldo. Lengthy residence, he arrived here as a child, as a citizen's son. And those were some of the facts. But we don't have to decide that, do we? No, you don't, Your Honor. And the only reason I bring it up is because I think it strengthens the standard of review here is abusive discretion of the district court in refusing to grant the motion for a new trial. And given the fact that this was a strong motion, we believe it would have been a fair and just reason and satisfied the fair and just reason that has to be shown in order to get a motion to withdraw a guilty plea granted before sentencing. If we looked at this more in the nature of the district court having implied the wrong legal standard, then abusive discretion, in effect, kind of metamorphs into de novo because it would be in fact, in abusive discretion, were the judge to have committed legal errors. It does, and it appears he seems to have used the wrong legal standard. He seemed to have said, well, you waived all of your constitutional errors when you pleaded guilty, so that's the end of the matter. That will he seemed to think that that would never be a fair and just reason to withdraw a guilty plea, but he didn't seem to take into account that there was this intervening decision that really changed the law of the circuit so that the motion really couldn't have been brought in good faith before the plea was entered because the law of the circuit was that he couldn't have brought this motion. Well, what about the fact that we had one continuance after another after another? I don't know what that number is for sentencing. It was some. A lot. I think it was 17. I think counsel and I were just talking about that because neither of us were trial counsel during the majority of those. Does that make any difference? Is it of any significance? They were all stipulated to. They were all stipulated to, Your Honor. So I, my argument is that it doesn't make any difference. They were stipulated to the only time. And I assume they weren't stipulated to with some prescience that Sancerre was going to drop out of the sky from the Supreme Court. Certainly not the way it came out. No, not at all. They were stipulated to in very bare bones stipulations, but they were stipulations and the court accepted them. It was really after the motion was filed that I think the government began to object to any more continuances. And I think there were three or four after that that the government objected to. But prior to that, they were all stipulated to. I know that at least one of them was due to defense counsel's help, but I, both of us were actually talking about it. We weren't sure why the other ones were granted. But I think the, I think it's correct that the trial court did seem to use an incorrect standard in deciding not to let Mr. Ortega withdraw his guilty plea in order to pursue this. And it's amazing that there are no, there are not that many cases directly on point. And I think the reason is, is because most probably many courts would believe that it is a fair and just reason to let someone take advantage of an intervening Supreme Court decision. Had he imposed that standard, but then still decided to deny the motion for withdrawal, we would be in a different situation. We would be in an abuse of discretion. Then we'd have to argue over whether it would have been reasonable or not to. But in any event, under either standard, I think this Ubaldo decision does strengthen the St. Cyr motion that Mr. Ortega proffered to the Court and lodged with the Court, given that the equities were the same, the, even the proceedings at the immigration court on Ubaldo's case and Mr. Ortega's case were almost identical, and that Ubaldo was told as well that he didn't, he wasn't eligible for 212C relief, just like Mr. Ortega was also told. So we would argue to the Court that Ubaldo is dispositive, at least on the validity and the strength of the motion to withdraw the guilty plea, and ask that the Court find that that be a fair and just reason for doing so. You would probably want us to affirm one of the enhancements, right? I mean, the two underlying offenses, the grand theft and the sexual battery, they are, the question is whether they are, qualify as aggravated. I don't think you need to reach that, Your Honor. If the Court finds that there was a fair and just reason for Mr. Ortega to withdraw the plea, then the sentence is vacated and we go back to square one, and this Court really wouldn't have to decide the rest of the motion. But what if it's futile? Pardon me, Your Honor? What if it were futile? What if we decided, what if we were to say that neither would qualify? If neither would qualify, you would not... Well, I'd love that, but... Would you? Because then he wouldn't be entitled to St. Cyr relief. Would he? Anyway, that's not part of our argument. Well, I think he may still be, because the judge erroneously told him not to apply. And so he needs to go back and show the immigration judge all of the equities to see if he would have actually gotten that relief. So I think most likely, but I really don't think this Court has to reach that issue at all, because it wouldn't be before the Court if the Court found that there was a fair and just reason for withdrawing the plea. Unless the Court has any questions, I will defer to Court Case Counsel. Good morning, Your Honors. May it please the Court, Daniel Saunders, Assistant U.S. Attorney for Appellee in this case. There are two key distinctions between this case on the one hand, and St. Cyr, and Dubaldo Figueroa, and all the cases decided by this Court under St. Cyr on the other hand. Why don't you answer the first question? Did the judge use the right standard? I believe the Court did, Your Honor. The Court applied the standard of whether the defendant had shown a fair and just reason to withdraw his plea. That was the standard. Where did the Court say that? That was the standard incorporated in the Court's ruling. The Court's oral ruling from the bench, as well as its subsequent written order, found that the defendant had not demonstrated a fair and just reason. Then he said why. Because. He said why. Well, the basis for the Court's holding was that even assuming any antecedent constitutional error, and it's not clear for the reasons set forth in the government's brief that there was such error in this case, that that by itself doesn't warrant vacating the defendant's guilty plea. Well, that's not what he said. Why don't you read what he said? What did he say exactly? The defendant has not shown. Yeah. The defendant has not shown fair and just reasons why he should be allowed to withdraw his plea, even in assuming a pre-plea constitutional violation. That by itself is insufficient to invalidate a properly entered guilty plea. That sounds exactly like he was saying that it was invalid, that it was not invalid and that that was the test. Is it valid? Is it not valid? And we know that's the test post-sentence, right? Under the Brady trilogy. Would you at least concede there's a difference in the standard pre-sentence, post-sentence? Or do you think it's one and the same? I believe that the Brady trilogy that deals with the finality and the conclusive effect of a guilty plea doesn't turn on the standard, doesn't turn on whether it's a habeas standard or a Rule 32 or now Rule 11 standard to withdraw a plea. Those cases deal with the final effect, that break in the causal chain that a guilty plea creates with respect to any antecedent error of either constitutional or nonconstitutional dimension. And so that trilogy, the principle that that trilogy stands for, which is the final and conclusive effect of a guilty plea, even under the language of Brady with respect to a later change in the law that proves that there was a legal, a mistake of law in entering the plea, doesn't by itself warrant vacation of a guilty plea. That's what Brady stands for. But I think the question, the more direct question that Judge Breyer is asking is, is there a difference in standard before sentencing and after sentencing? Let's start there. Well, certainly the difference in standard to go back and withdraw the plea is a different one. All right. Under Rule 11, it's a fair and just reason. Following a sentencing and a post-conviction proceeding, there's a greater standard that the defendant has to show. But what is that standard? With respect to a post-conviction habeas, the defendant, I believe, has to show actual prejudice from a, from an error of constitutional dimension. I may be mistaken on that. I'm not. But since it's a fair and just standard, but it seemed to me that what the judge was doing was really evaluating this along the lines that we would evaluate whether there was any basis as to, in effect, the constitutionality of the entry of the plea. I mean, it was like he was merging the standard analysis, and he didn't really deal with the intervening Supreme Court law as the basis for whether that's fair or just. Well, Your Honor, all of the briefs in the case with respect to the motion to withdraw the plea dealt very clearly with St. Cyr. That was clearly the issue before the Court as to whether or not St. Cyr, that intervening decision, provided a fair and just reason to allow the defendant to withdraw his plea, which was the correct question that the Court had to decide. And I would submit that in finding no fair and just reason presented, the Court determined that even were there a St. Cyr violation in connection with the prior deportation, it would not, as the Court said, be a fair and just reason. And that was essentially all that the defendant presented. The question that this Court has to decide is whether the district court abused its discretion in so finding. And I am not aware, and I've done a thorough search as recently as yesterday, of any case from any circuit, because the St. Cyr issue has been raised repeatedly since the case came down, that holds that a defendant must be allowed to withdraw his guilty plea in order to challenge a prior deportation under St. Cyr. What we have here is a claim that, as we point out in our brief, clearly could have been raised earlier. In fact, the defendant in the reply brief points out the Ninth Circuit case of Magano-Pisano and holds that that provided the basis for the defendant not to raise a claim. Could the judge have decided, could the judge have said, look, I think that the change in the law doesn't invalidate the plea. However, I want to tell you that, given all the equities, I think that I could – that I'll set it aside. Could he have said that? Could the Court have said that?  Okay. The Court could have said that. The question is, is it an abuse of discretion for him to have found the other way? All right. And that's another issue. Certainly, the government agrees the Court could have exercised its discretion to allow withdrawal of the plea. Now, how do we know he said that? Because what he actually said was that the existence of St. Cyr doesn't invalidate the plea. That's true. It might not. That's what he said. He said there's no fair and just reason because the plea has not been invalidated by St. Cyr. So he applied a different standard, at least he appears to have applied a different standard, or actually joined the two standards and said that the reason that there's no fair and just reason is because the plea's not invalidated. I think perhaps the Court's language in choosing the word invalidate might have been inartful, but I think if you put the two sentences of the Court's ruling together, what the Court is clearly saying is that the defendant has not presented a fair and just reason because of the plea. I would suggest the Court's not clearly saying what you're saying. I mean, that's one thing that's clear, is that it's not that clear. I'll concede that as well, Your Honor. But I think the – certainly the most reasonable reading of the Court's ruling in toto, both of those sentences, is that the Court is saying that it has considered the issue which was before it, which was whether the St. Cyr – whether St. Cyr means that there was a constitutional error in the defendant's prior deportation proceeding, and if so, whether that is a sufficient basis under then Rule 32 to allow the defendant to withdraw his plea, and that the Court is finding that even assuming a constitutional error, the defendant has not presented a fair and just reason. I think that's the view of all these. Kagan. Do you think that the standard of whether the plea was valid or invalid figures into an analysis in a pre-sentencing context? Of whether the plea was valid or invalid in terms of knowingly and voluntarily entered? Right. I think that's – that is part of the standard, certainly, and that unless the defendant makes a showing that somehow the plea was unintelligent or involuntary, that that counsels against a finding of a fair and just reason to withdraw the plea. In this case, the plea colloquy was extremely thorough. But let's put it this way. You don't – you don't need to invalidate the plea in order to find a fair and just reason to withdraw it. That's correct, Your Honor. I agree with that. And so I think that the difficulty we're having is the judge seemed to think that because the plea wasn't invalid, therefore, there's no fair and just reason. And so in a way, he's mixing and matching. And maybe he didn't mean to, but that's where I end up. It wasn't invalid, therefore, it doesn't fall under the fair and just. And I – your argument is a plausible one. Maybe that's really what the judge was thinking. I think the difficulty we're having is wouldn't it be – doesn't it make sense to just send it back? And if you're right in terms of your equities, you'll be back where you are. If Sancier wins the day, then he'll have that opportunity. Why wouldn't that make the most sense in light of this kind of a record? Is the Court considering sending it back to allow the district court to clarify its ruling with respect to the denial of the withdrawal motion, or to send it back with directions to the Court to allow withdrawal of the plea and proceed to the motion to withdraw the information? Well, I guess that we're considering everything from affirming to reversing and remanding. Which would be what the government would encourage. Is that clear? I certainly understand the range of options available to the Court. No, but it's a – you raise a good point. So why don't you follow that down? Let's just – I know you wouldn't agree with this, but let's just say that we decided to remand it. Okay. What do you think are the range of our options? Not necessarily you would agree with all of them, but what's our options? Well, the most limited remand certainly would be to have the Court clarify the basis for denying the motion to withdraw the plea. And I think if the Court had, instead of using the word invalidate in its oral ruling, simply said that even assuming a pre-plea constitutional violation, that by itself is insufficient to warrant withdrawal of a plea or to permit a defendant to withdraw his plea, I think the Court, the panel here, would be much clearer as to what the Court's intent was, and we would then be able to address specifically the issue of whether that ruling was an abuse of the Court's discretion, and we could move on perhaps to whether or not the defendant had raised a valid challenge to the underlying deportation. So that remand to allow the Court to clarify its findings with respect to the reason for denying the Rule 32 motion would present this Court with an ample record, I believe, to address the merits of the case. Obviously, the broader remand, which the government would submit as unwarranted in this case, would be based on a finding that the Court did abuse its discretion in denying the motion and to remand with directions to allow the defendant to withdraw his plea and proceed to the merits of any motion that the defendant would bring to dismiss the indictment based on a constitutional challenge. What if it appeared that the motion was meritorious, clearly meritorious? What if it appeared at that point? Again, I would submit that it would not be an abuse of discretion post-plea. We're in a very different posture here post-plea, and I think the Brady Trilogy makes that clear, that even assuming any error, even assuming the merit of the challenge, that still alone does not mandate the Court to exercise its discretion in favor of allowing the defendant to withdraw his plea. Now, the government submits that we don't have a meritorious claim here, largely because of the prejudice issue. And I think that Ubaldo-Figueroa itself, the revised opinion, makes that clear. In distinguishing the circumstances of Ubaldo-Figueroa that are set forth in that opinion from the circumstances of this defendant, it becomes abundantly clear that the defendant here can't show the outstanding equities required. Well, that I don't know. But you have now equated, in my view, you've equated a fair and just reason with the invalidity. In other words, if you simply say that because of the Brady Trilogy, which deals with the validity, doesn't it? Brady Trilogy deals with the validity of the guilty case. Okay. So you say, well, that can be a fair and just reason. You say that if we send it back to the judge and say, well, what exactly did you mean? And then he says, well, the Brady Trilogy being what it is, it's not going to be valid, and therefore, it's a fair and just reason for me not to do it. Aren't we back here again? Haven't we just decided the same thing? Isn't there this different standard? And it's not the validity. That's not the issue, because that's post-sentencing, isn't it? With respect to the validity of the plea, yes, it's post-sentencing, although, of course, the validity can itself be a basis for a Rule 32 motion to withdraw the plea. I'm out of time with the Court. Please answer. The question of whether the Court would abuse its discretion by granting the motion to withdraw the plea, I'm sorry, by denying the motion to withdraw the plea, even if it finds a meritorious basis for that plea, is one that the government submits as answered in the negative, that the Court could certainly grant that motion if the Court finds there's a meritorious underlying basis. That wouldn't be an abuse of the Court's discretion. But the Court also, in a post-plea posture, doesn't – isn't required to exercise its discretion to allow the defendant to withdraw his plea simply by virtue of a change in the law. And I realize we're talking about the validity of a plea in the Brady context, but Brady still does say that a change in the law or later judicial decisions that show that the plea rested on a faulty premise do not render the plea vulnerable in language of Brady. At what point of the proceedings is the Brady Trilogy addressing? Well, I believe, again, the Brady Trilogy stands for the conclusive effects of a plea, not just with respect to post-conviction proceedings, but in terms of that break in the causal chain and the inability of a defendant post-plea to raise a constitutional claim. My question is, at what point, looking at the Brady Trilogy, was it addressing the – at what stage of the proceedings was it actually addressing the decision to try to change the circumstances? It was addressing it certainly in a post-sentencing context, but I – So the question is whether or not that analogy of the post-context should be applied pre-context. But to argue just the Brady argument is, again, arguing the validity of the plea. I understand the Court's point, but again, it would just be the government's position that to the extent the Brady Trilogy does address in that context of post-sentence that break in the causal chain that the plea presents, that that itself additionally has application to the Rule 32 standard of whether the defendant has presented a fair and just reason. If any constitutional challenge that the defendant thought of post-plea pre-sentencing could present a fair and just reason to permit withdrawal of the plea, then certainly there would be some case out there that said so or Rule 11 itself would say so. But the plea itself is supposed to have a final effect, to break that causal chain, so that if the defendant one month or in this case two years later comes up with an argument that could have been raised earlier, as this argument certainly could have, whether that be a suppression motion, whether it be a challenge to a statement, whether it be a challenge to an underlying deportation, that the defendant does not automatically get to withdraw that plea simply because he has thought up a later challenge. But that — But, Counselor, just because it doesn't mean that there's an automatic withdrawal doesn't mean that the district court then wouldn't have an obligation to examine the merits of the claim as a way of examining whether there is a fair and just reason for doing so. Sure, lots of defendants will be able to come up and concoct some kind of ephemeral due process violation that occurred that they will process on appeal and therefore would like to withdraw their guilty plea. But if there's something that's meritorious there, a district judge I think would be wise to say, gee, I think there's good reasons for wanting to fix this at this time. And why wouldn't the district judge want to take a look at the St. Cyr question and say, gee, did you — are there some merits there? Now, there may be some countervailing arguments. You've got a long passage of time here. He sat on his rights for a long time if he had a St. Cyr argument. But those are all arguments that ought to be pressed to the district court, and he's just simply said the plea is valid and therefore there's no equities. Although the district court's ruling was certainly a brief and terse one from the bench and in its written order, I would submit it's not clear that the Court didn't look at the merits in this case of the St. Cyr issue. And perhaps that would be something that the Court would ask the district court to clarify on remand. The merits of the St. Cyr issue were raised extensively in the briefs on both sides. In fact, the defendant lodged with the Court as part of the motion to withdraw the plea the anticipated motion to dismiss the indictment. Breyer, I have a hard time understanding why he doesn't have a decent St. Cyr argument. You're not arguing he doesn't, do you? Do you think he doesn't have a St. Cyr argument? He may never get the 212C dispensation or special consideration or whatever that's called, but why doesn't he have a good St. Cyr argument? I think the reason that the defendant doesn't have a valid St. Cyr argument is that there are three things that he would need to demonstrate in order to successfully challenge that prior deportation. One of them is due process violation resulting in actual prejudice. The second is exhaustion of administrative remedies. And the third is that the proceedings improperly deprived him of judicial review. What happened in this case, as opposed to what happened in St. Cyr and Rubaldo Figueroa and that whole line of cases, is that the defendant was extensively advised by the immigration judge of his eligibility for discretionary relief. In this case? In this case, Your Honor. No, he was actually given the wrong reason. He was told, he was told, well, look, if you can prove that you didn't molest a child or I don't know, the age of the victim or whatever it is, you might have, you might be able to get some discretionary review. He wasn't told about 212C, was he? He was told that at present time it appears you're eligible for discretionary relief. Yeah, but it wasn't, he was, and then they went on to explain what the nature of the relief was and what it would be based on. And, of course, he said, look, I'm not, I won't win on that ground. I give up on it. I'm not going to. The judge made it clear that I wouldn't get relief. I would get it only until the government proved the age of the victim, which they could do, so it was useless to wait around and have it happen because the judge told me I wouldn't get relief anyway. I believe, Your Honor, the Court is reading from an unsigned declaration prepared by defense counsel. Of course it was unsigned. It was unsigned because, in fact, in fact, it became almost academic once the judge said, I'm not going to allow you to withdraw your plea because, by the way, it's invalid. I mean, it's not invalid. It's valid. Sorry. There was no, you couldn't, no reason to get to that other issue. Well, I, I, the government's arguing he doesn't even have a good Saint Seer. Maybe that, that's an interesting argument. The only evidence in the record of the reason why the defendant, at the immigration hearing, declines to avail himself of the opportunity for discretionary relief was his statement that he knows he has a big criminal history. He's seen people with less criminal history than he has apply and get denied. He just wants to throw in the towel and go back, presumably so he could then come back into the United States, which he did immediately on both occasions. That is the competent evidence that shows why the defendant declines to avail himself of discretionary relief. The fact that the immigration judge couched it in the new terms of the 1229b relief rather than the old terms of the 212c relief we would submit is immaterial. And I think one of the key cases in this regard is an out-of-circuit case from the Tenth Circuit that we cited in our 28J letter, the Aguirre-Tello case, which en banc overruled the panel decision that the defendant had cited. And in Aguirre-Tello, if the Court looks at that en banc decision, the immigration judge in that case had discussed the relief from deportation in terms of some type of pardon, rather than using the correct description of it in terms of waiver. And the Court held in Aguirre-Tello en banc that the terminology is not important. What is it? Well, of course, because there's a very big difference between saying, okay, I can give you some relief and it's within the discretion of the Attorney General. I mean, that has a lot of the aspects of a pardon. Here, what was going on clearly from this, or at least it appears from the record, was that he thought that in order for him to be entitled to relief or to be considered for relief, he would have to contest the age of the victim. Now, that's a very different type of thing from saying whether or not you might qualify for 212C relief. Well, there are two reasons, two forms of relief, and I tell you one. And you say, on that, there are two forms. I only tell you about one, and you say, no, I can't fight that. I can't fight that. We are to conclude from that that if he had been told the other form of relief, he would have come to the same conclusion. That's a fair reading. It may be a very fine point, Your Honor, but I believe that the immigration judge didn't put the burden on the defendant to prove that he hadn't molested a child, but simply said if the government later comes forward and this turns to be an aggravated felony, then you'd be ineligible. But again, the reason that the defendant gave, which is the only evidence that we have of what was in his mind at the time, had nothing to do with the age of the victim or the aggravated felony. It dealt with his criminal history that he knew he would not get relief. Because of the age of the victim? No, Your Honor. Because of his extensive criminal history, with respect. He says, I've seen people with less than 12 years. Is that true also on 212C relief? Can you have extensive criminal history and be qualified for 212C relief? Under Gonzales-Valerio from this circuit, Your Honor, if the defendant has an extensive criminal history, as this defendant unquestionably has, the defendant would be required to show outstanding equities in his favor in order to get 212C relief. Now, in Gonzales-Valerio, the defendant had lived in the country for 14 years. He had ties to family. His family lived in the United States. He had a declaration from an expert. He made a finding on this record that he couldn't even show it. That's a fair conclusion for a court of appeals to make on this record? The court of appeals in Gonzales-Valerio made that determination, Your Honor, that the defendant couldn't show prejudice on a much – on a record that is very little different from this defendant in terms of his background. This defendant does not have a family. Where do we look in the record for all the equities that he was able to produce, given an opportunity to produce, and which were rejected? Where do we find that in the record? The best place, Your Honor, to find the defendant's ties and background and anything he could present, I submit, would be in the defendant's presentence report in this case, which you have presented to the immigration judge? No, Your Honor, because the defendant declined the opportunity to make that pitch. The immigration judge offered it. We've – I think we've exhausted you and gotten you pretty far afield from where you started, so thank you. Thank you, Your Honor. We can see how two little words, invalidate or unfair in jest, two phrases have caused us great difficulty. So we'll hear from Mr. Ortega's counsel. One thing I'd like you to address is Mr. Saunders said if we found the wrong standard, then the appropriate thing to do would be to go back and, as we often do when a district judge imposes the wrong standard, to go back and do it under the right standard, and then we'll all know what the answer is under the right standard. What is your position on that? Your Honor, I think it's telling that there is very few – there are very few decisions that deal with the situation where a district judge does not let a person who is pre-sentenced withdraw his plea because of an intervening Supreme Court decision that changes the law of the circuit. It's telling because it is an abuse of discretion not to do that. It is a fair and just reason when the Supreme Court changes the law of the land, changes the law of the circuit that came down four months before his plea was entered. He relied on the law of the circuit. It was very clear he did not have a case under Megania Pisano, under the standard that the Ninth Circuit set. And as the Court pointed out, Riley, it was surprising that the Supreme Court came down with St. Cyr. This was not a concocted thing. This was something very unexpected and very wonderful for him because his facts are right on point with St. Cyr, and they're right on point with the current law of the circuit, not the Tenth Circuit, the Ninth Circuit, Ubaldo, which came down two months ago. So our position is he presented a fair and just reason. The Court could go back and tell Judge Liu to clarify, what did you really mean by fair and just? But really what should happen here, which is fair and just for Mr. Ortega, would be for this Court to say it's fair and just to let him withdraw his plea given the Supreme Court decision. Now, I understand there were all these stipulations and the delay and all, but frankly, there's no evidence in the record that this was any kind of concoction or scam or some deliberate way that this defendant in his counsel tried to, you know, delay or in any way obstruct justice in this case. He relied on a Supreme Court decision. He should have been allowed to at least present his case to the district judge. And I would urge the Court, I know I'm speaking with a lot of passion, but I'm urging the Court to really validate that this is a good reason, relying on the Supreme Court and relying on the Ninth Circuit law. It's a fair and just reason. And I don't want the Court to just go back and tell Judge Liu what was your real standard. The district courts in the circuit need to know this is a fair and just reason. So if it happens again that the Supreme Court pops out with some completely unexpected decision that changes Ninth Circuit law, that actually favors a defendant, you know, they should be allowed, the district courts should be told, give them a chance to make their case. You don't have to grant it, grant the ultimate relief requested, but give them a chance to make the motion. And that's why I want to ask the Court to do that, because it's fair and just and it's what should happen. Thank you. The case of United States v. Ortega-Escanio is submitted. Robinson v. Gervino, Green v. Rowers, United States v. Nana are submitted on the briefs. And the next case for argument is Cinea Varela v. CBS. Thank you.
judges: McKeown, Bybee, Breyer